UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILLIP JEAN-LAURENT,

                        Plaintiff,

              v.

C.O. R. LOS, and
C.O. J. DAMSTETTER,

                      Defendants.
_____

REPORT
and
RECOMMENDATION

12-CV-00132S(F)

APPEARANCES:      PHILLIP JEAN-LAURENT, *Pro Se*
                        300-13-00230
                        Box 200016
                        South Ozone Park, New York  11420

                        ERIC T. SCHNEIDERMAN
                        Attorney General, State of New York
                        Attorney for Defendants
                        STEPHANIE JOY CALHOUN
                        Assistant Attorney General, of Counsel
                        Main Place Tower
                        350 Main Street
                        Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

October 23, 2013, for all pretrial matters.  The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 41), filed June 5, 2014.

## BACKGROUND

Plaintiff Phillip Jean-Laurent ("Plaintiff"), proceeding *pro se*, commenced this civil

rights action on February 13, 2012, alleging that while incarcerated at Collins II

Correctional Facility, Defendants R. Los ("Los"), and J. Damstetter ("Damstetter"), both Corrections Officers with New York Department of Corrections and Community Supervision ("DOCCS"), interfered with his First Amendment rights to the free exercise of his Muslim religion, and access to the courts, and the Eighth Amendment.[1] Plaintiff specifically alleges that between August and September 2009, during Ramadan, a period of required Islamic religious exercises, Defendants deprived Plaintiff of morning and evening meals and also prevented Plaintiff from attending Islamic religious services after using the correctional facility's law library as Plaintiff maintains he needed to do to meet deadlines relating to Plaintiff's court cases, causing Plaintiff to miss two of the religious diet meals for consumption during Ramadan's non-fasting hours.

On June 5, 2014, Defendants filed the instant motion for summary judgment (Doc. No. 41) ("Defendants' Motion"), attaching Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 41-1) ("Defendants' Memorandum"), Statement of Undisputed Facts (Doc. No. 41-2) ("Undisputed Facts"), the Declaration of Defendant John Damstetter (Doc. No. 41-3) ("Damstetter Declaration"), the Declaration of Defendant Rickie Los (Doc. No. 41-4) ("Los Declaration"), the Declaration of Philip Greis (Doc. No. 41-5) ("Greis Declaration"), and the Declaration of Assistant Attorney General Stephanie Joy Calhoun (Doc. No. 41-6) ("Calhoun Declaration").  The Notice of Motion contains the admonishment that "THE CLAIMS PLAINTIFF ASSERTS IN HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE DOES NOT RESPOND TO THIS MOTION by filing his own sworn affidavits or other papers as required by Rule 56(d)."  Defendants' Motion at 2.  Plaintiff,

---

[1] By Order filed August 28, 2012 (Doc. No. 3), Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, *et seq.*, was dismissed, and the action was also dismissed as against Defendants Thompson, Berbary, and Bellamy.

however, did not file any response in opposition to summary judgment.  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.

## **FACTS**[2]

At all times relevant to this action, Plaintiff Phillip Jean-Laurent ("Plaintiff" or "Jean-Laurent"), who is Muslim, was incarcerated at Collins II Correctional Facility ("Collins" or "the correctional facility"), where Defendants John Damstetter ("Damstetter"), and Rickie Los ("Los"), served as New York Department of Corrections and Community Supervision ("DOCCS") corrections officers.  Collins Policy and Procedure No. 2006 ("P&P No. 2006"), pertaining to inmate movement within the correctional facility provides that an inmate may sign out to only one destination or "call-out" at a time, and must return to his dorm room and sign out for a second call-out before he is allowed to attend the second call-out.  According to Collins Policy and Procedure No. 2066 ("P&P No. 2066"), an inmate is required to report to his housing unit officer for all correctional facility movements except for Mess Hall call-outs.  The housing unit officer then records the designation and time out and in for each call-out.

The regular diet provided to inmates housed in Collins consists of three daily meals including one cold meal and two hot meals.  As a Muslim, Plaintiff observes a ritual fast during Ramadan, which takes place during the months of August and September, requiring observants fast between sunrise and sunset.  Because participating in the regular diet would result in non-compliance with the Ramadan fasting requirements, each night during Ramadan, observant inmates are allowed to take food

---

[2]  The Facts are taken from the pleadings and motion papers filed in this action.

from the evening meal served in the correctional facility's cafeteria to non-observant inmates, to their cubes to eat after sundown, and are provided with bags of food which the inmates can consume for the breakfast meal or "Sahor" prior to sunrise.  Observant inmates are also permitted to have in their cubes food products purchased from the commissary, which they may eat before sunrise, and inmate may further prepare any commissary items in the kitchens located on the housing units.

Collins Correctional P&P No. 2066 is an inmate movement policy restricting each inmate's movement to that necessary to attend specific programs for which the inmates must sign-up to attend.  Movement Policy.[3]  The Movement Policy's stated purpose is the provision of a procedure to insure the movement of inmates throughout the correctional facility in an orderly fashion so as to maintain accountability and safety for both staff and inmates.  Movement Policy § II.  In particular, inmates "must report to housing unit officer for all movements except for Mess Hall movements.  Housing unit officers will record the time out/in destination on time out sheets."  *Id.* § V.F.1.  Movement is by call-out under staff direction for both law library *id.*, § V.B., and for religious services.  *Id.* § V.C.

To attend any correctional facility program, including law library and Ramadan services, an inmate must sign up for that program's "call-out."  Some call-outs at the correctional facility are voluntary, and some are mandatory.  An inmate who signs up for a mandatory call-out takes the place of another inmate such that attendance is required whereas attendance at a voluntary call-out is not required.  An inmate who fails to report to a mandatory call-out may be charged with a violation of prison disciplinary rule 109.10 forbidding an inmate within a DOCCS correctional facility from being out of

---

[3] Greis Declaration Exh. B.

place.  Ramadan is a voluntary call-out, whereas the law library is a mandatory call-out

because of the limited space and resources available for each call-out time.

At all times relevant to this action, the correctional facility's law library was

available to general population inmates twice a day, seven days a week, with law library

call-outs held between the hours of 2:00 P.M. and 4:00 P.M. ("afternoon call-out"), and

again between 6:00 P.M. and 10:00 P.M. ("evening call-out").  Each day, an inmate may

sign up to attend one, both, or none of the law library call-outs.  Ramadan call-outs were

scheduled for the entire evening, with an inmate allowed to report at 5:30 P.M. to the

masjid[4] for evening prayer, following which the inmates were escorted by corrections

officers to the messhall for the evening meal, after which the inmates were permitted

either to return to the masjid to participate in further services until 9:30 P.M., or to return

to their housing units.  When both Ramadan and law library call-outs occur at the same

time, an inmate may choose to attend one or the other, but never both.  As such,

inmates are not allowed to freely move between the law library and Ramadan services

that are scheduled for the same time.

DOCCS's accommodations at Collins permitted Muslim inmates to participate in

Ramadan services in the correctional facility's masjid each evening at 5:30 P.M., during

which they could participate in congregate prayers, read the Koran, conduct religious

classes and break the fast at sunset.  In particular, upon the Ramadan call-out, Muslim

inmates would report to the masjid for congregate prayer, before being escorted by a

correctional officer to the messhall to receive the evening meal and the sahor bag for

the following morning meal to be eaten before sunrise.  An inmate who signed up for,

---

[4] In the interest of consistency with the papers filed by Plaintiff and Defendants, the court refers to the place where Muslims gather for congregate prayer by the Arabic word "masjid" rather than the English word "mosque."

yet missed the call-out for three Ramadan services would be removed from the
Ramadan list and no longer permitted to participate in Ramadan services or to receive
the Ramadan meals.

Plaintiff alleges that on August 21, 2009, he commenced his observance of
Ramadan requiring Plaintiff, as relevant to this action, to fast between sunrise and
sunset, and attend congregate prayer five times each day.  At 3:30 A.M. on August 22,
2009, Plaintiff began the daily fast, and reported for Ramadan services to the masjid at
5:30 P.M., then returned to his housing unit to sign out for the law library's evening call-
out.  Defendant Damstetter, however, advised Plaintiff that because Plaintiff had already
chosen to attend Ramadan services, Plaintiff could not interrupt Ramadan services for
the law library call-out and that Plaintiff would have to choose to attend one or the other,
despite Plaintiff's assertion to Damstetter that deadlines in several of Plaintiff's court
cases were approaching.  On August 23, 2009, Plaintiff again reported to the masjid for
Ramadan services at 5:30 P.M., before returning to his housing unit to sign-up for the
evening law library call-out.  Plaintiff was permitted to attend the evening law library call-
out, but at 7:00 P.M., when Plaintiff informed Defendant Los of his intention to return to
the masjid to attend further Ramadan services that evening, Los advised Plaintiff that
such action would subject Plaintiff to punitive confinement and directed Plaintiff to return
to his housing unit, advising Plaintiff could not attend both Ramadan services and the
law library during the same scheduled call-out.  As such, although Plaintiff fasted from
sunrise to sunset, in order to attend the law library's evening call-out, Plaintiff was
required to forgo participating in Ramadan services, including eating the evening
Ramadan meal and receiving the sahor meal bag.

On August 24, 2004, Plaintiff filed an inmate grievance ("inmate grievance"), and complained to the correctional facility's Islamic chaplain ("the chaplain"), about not being allowed to attend both Ramadan call-out and the evening law library call-out.  The chaplain informed DOCCS Deputy Superintendent of Programs Thompson ("Thompson"), of the situation, yet Thompson took no action to remedy the problem because of Plaintiff's pending inmate grievance.  On September 9, 2009, the inmate grievance was denied.  Upon appeal to DOCCS Central Officer Review Committee ("CORC"), the discretion of the correctional facility's administrators to promulgate procedures for inmate movement was upheld, with CORC noting "that accommodations were made for the grievant to have special access to the Law Library and that [Plaintiff] attended regularly."  CORC Decision.[5]


## DISCUSSION

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any

---

[5] Damstetter Declaration Exh. A at Bates 20.

source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Plaintiff's claims seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983, however, does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Here, Plaintiff's claims alleging Defendants denied him access to both Ramadan services and the law library, interfered with his rights to religious freedom and access to the courts in violation of the First, Eighth, and Fourteenth Amendments.

Moving Defendants argue in support of summary judgment that Defendants' refusal to permit Plaintiff to both attend Ramadan services and visit the correctional facility's law library during the same call-out was in furtherance of a legitimate prison policy in maintaining prison security, Defendants' Memorandum at 3-6; Defendants' actions did not substantially burden Plaintiff's practice of his religion, *id.* at 7-13; that Plaintiff missed two meals is *de minimis* in nature and does not rise to the level of a constitutional violation, *id.* at 13-14; Plaintiff's inability to attend the law library on one occasion was not a denial of his access to the courts. *Id.* at 15-16. As stated, Background and Facts, *supra*, at 2, Plaintiff has not presented any argument in opposition to summary judgment.

## 2. Movement Policy

Although not articulated as such, Plaintiff's claims arise from Defendants' enforcement of the correctional facility's Movement Policy which prevented Plaintiff, as

an inmate, from attending on the same day during the month of Ramadan both

Ramadan services and the evening law library call-out, thereby allegedly interfering

both with Plaintiff's right to the free exercise of his religion as well as his right of access

to the courts.  It is settled that prisoners do not abandon their constitutional rights at the

"jailhouse door." *Bell v. Wolfish*, 441 U.S. 520, 576 (1979) (Marshall,J., dissenting).

Nevertheless, "'[l]awful incarceration brings about the necessary withdrawal or limitation

of many privileges and rights, a retraction justified by the considerations underlying our

penal system.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price

v. Johnston*, 334 U.S. 266, 285 (1948)).  "The limitations on the exercise of

constitutional rights arise both from the fact of incarceration and from valid penological

objectives – including deterrence of crime, rehabilitation of prisoners, and institutional

security." *O'Lone*, 482 U.S. at 348 (citing cases).  To ensure appropriate deference is

afforded to prison administrators, "prison regulations alleged to infringe constitutional

rights are judged under a 'reasonableness' test less restrictive than that ordinarily

applied to alleged infringements of fundamental constitutional rights." *Id.* at 349 (citing

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

"'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is

valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v.

Safley*, 482 U.S. 78, 89 (1987)).  "This approach ensures the ability of corrections

officials 'to anticipate security problems and to adopt innovative solutions to the

intractable problems of prison administration,' and avoids unnecessary intrusion of the

judiciary into problems particularly ill suited to 'resolution by decree.'" *Id.* at 349-50

(quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds*

*by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).  As such, "a challenged prison regulation is judged 'under a 'reasonableness' test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'"  *Salahuddin*, 467 F.3d at 274 (quoting *O'Lone*, 482 U.S. at 349 (additional internal quotation marks omitted)).

Before considering the balance between the restrictions posed by a prison regulation on an inmate's constitutional rights and the legitimate penological interest advanced by the same regulation, however, the inmate plaintiff must establish that his exercise of some constitutional right was substantially burdened.  *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (determining first whether challenged action placed substantial burden on inmate plaintiff's religion before determining whether such action was reasonably related to legitimate penological interest).  "The defendants [prison officials] then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct" to shift the burden back to the inmate to "show that these articulated concerns were irrational."  *Salahuddin*, at 275 (internal quotation marks, citations, and brackets omitted).  As such, before the court addresses the balance between the interests of the inmate and the prison officials, an inmate plaintiff must allege how the conduct infringes the free exercise of his religion. *Candelaria v. Coughlin*, 787 F.Supp.2d 368, 376-77 (S.D.N.Y. 1992).  Similarly, Plaintiff's access to court claim, based on the First Amendment, requires Plaintiff first demonstrate the alleged interference with his law library attendance during the evening call-out hindered Plaintiff's pursuit of some legal claim.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

**A.      Free Exercise of Religion**

With regard to Plaintiff's claim under the First Amendment that he was wrongfully

denied his right to freely exercise his religion when Defendants refused Plaintiff

permission to leave the law library to attend Ramadan services, Defendants argue that

Plaintiff's inability to attend the masjid for Ramadan services on two occasions,

including on August 22 and 23, 2009, was only a *de minimis* infringement on Plaintiff's

exercise of his religion and, thus, did not pose a substantial burden Plaintiff's freedom of

religion.  Defendants' Memorandum at 8-10.  Because Plaintiff did not file anything in

opposition to summary judgment, Plaintiff does not argue otherwise.

It is well-settled that despite incarceration, prisoners retain their right to religious

freedom and are entitled to reasonable accommodation of their religious beliefs,

consistent with the needs of prison security.  As such, a religious liberty claim asserted

under the First Amendment requires the prisoner first demonstrate "that the disputed

conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin v. Goord*,

467 F.3d 263, 274-75 (3d Cir. 2006).   Courts within the Second Circuit have

consistently held that missing two religious services does not pose a substantial burden

on an inmate's religion.  *See Blabock v. Jacobsen*, 2014 WL 5324326, at * 7 (S.D.N.Y.

Oct. 20, 2014) (dismissing inmate plaintiff's claims alleging a violation of Free Exercise

Clause because missing two Muslim religious services while awaiting disciplinary

hearing did not substantially burden the plaintiff's ability to freely exercise his religion);

*Shapiro v. Community First Services, Inc.*,  2014 WL 1276479, at * 11 (E.D.N.Y. Mar.

27, 2014) (holding missing two religious services poses only an insubstantial burden on

an inmate's free exercise of his religion); *Williams v. Weaver*, 2006 WL 2794417, at * 5 (N.D.N.Y. Sept. 26, 2006) (missing two Muslim religious services and two Muslim religious classes did not arise to constitutional violation).  Although not argued by Plaintiff, missing two of the Ramadan meals also does not constitute a violation of Plaintiff's First Amendment right to the free exercise of his religion.  *See Washington v. Afify*, 968 F.Supp.2d 532, 537-38 (W.D.N.Y. 2013) (denial of three consecutive Ramadan meals, including two breakfasts and one evening meal, does not violate First Amendment).  Moreover, Plaintiff's inability to attend the Ramadan services at issue is attributed to Plaintiff's decision to attend the evening law library call-out, which required Plaintiff to forgo attending the Ramadan services, rather than any arbitrary decision by any Defendant to prevent Plaintiff from attending Ramadan services.  *See Wray v. City of New York*, 490 F.3d 189, 193-94 (2d Cir. 2007) (requiring causal connection between defendant's action and plaintiff's injury to pursue § 1983 claim).

Defendants' Motion seeking summary judgment thus should be GRANTED insofar as Plaintiff alleges the Movement Policy interfered with the free exercise of his religion pursuant to which Plaintiff was not permitted to be called-out for two programs scheduled for the same or overlapping times such that Plaintiff was able, during Ramadan, to attend in the evening either Ramadan services or the evening law library call-out, but not both.

### B.    Access to Courts

"It is settled that 'meaningful access to the courts is the touchstone' of the First Amendment as it pertains to litigation commenced by a prison inmate."  *Ramsey v. Goord*, 661 F.Supp.2d 370, 401 (W.D.N.Y. 2009) (citing *Bounds v. Smith*, 430 U.S. 817,

823 (1977), and *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997)).  An inmate's right of meaningful access to the courts "is rooted in the constitutional guarantees of equal protection of the laws and due process of law."  *Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004).  Among the requirements for such meaningful access is assistance in the preparation and filing of legal papers by providing inmates with, *inter alia*, adequate law libraries.  *Bounds*, 430 U.S. at 828.  "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jeromsen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)).  Rather, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Further, to show actual injury, the challenged conduct must have "hindered his efforts to pursue a legal claim."  *Id*.  Even a prison regulation that substantially burdens an inmate's access to the courts and results in actual injury, however, will not violate the inmate's constitutional right of access to the courts provided the regulation is reasonably related to legitimate penological interests.  *Lewis v. Casey*, 518 U.S. 343, 361-62 (1996).

Here, despite asserting that his inability to attend the evening law library call-out would hamper Plaintiff's ability to meet several impending deadlines in pending court actions, Plaintiff has utterly failed to specify what deadlines he was in danger of missing in what cases if he chose to attend Ramadan services, thus forgoing the opportunity to attend evening law library call-out.  Plaintiff does not assert he was unable to attend the

afternoon law library call-out, and utterly fails to attempt to explain why attending only

the afternoon law library call-out would not provide him with ample time to prepare

papers for such cases.  Accordingly, Plaintiff has failed to show the requisite actual

injury caused by his inability to attend the evening law library call-out so as to establish

the Movement Policy substantially interfered with his constitutional right of access to the

courts.  *See Wray*, 490 F.3d at 193-94 (requiring causal connection between

defendant's action and plaintiff's injury to establish § 1983 claim).

### C.   Legitimate Penological Interest

Although summary judgment in favor of Defendants may be granted based solely

on Plaintiff's failure to establish Defendants' restriction of Plaintiff's movement

throughout the correctional facility in accordance with the Movement Policy resulted in

any substantial interference with Plaintiffs constitutional rights to the free exercise of his

religion and of access to the courts, because Defendants' motion is before the

undersigned for a report and recommendation, whether the Movement Policy serves a

legitimate penological interest is addressed in the alternative.

Because of the "difficult judgments" attendant to prison operation, a generally

applicable correctional facility policy, despite burdening an inmate's exercise of his

religion, will not violate the inmate's exercise of his religious freedom provided the policy

is reasonably related to legitimate penological interests.  *Holland v. Goord*, 758 F.3d

215, 222 (2d Cir. 2014) (internal quotation marks omitted and citing *O'Lone v. Estate of

Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987); and *Redd

v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010)).  In other words, constitutional protections

afforded to inmates must be balanced against the interest of prison officials charged

with the complex duties arising from administering the prison system. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). In making this determination, the court must consider:

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the rights; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Holland*, 758 F.3d at 222-23 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006)).

In support of summary judgment, Defendants argue they have demonstrated a neutral and legitimate penal interest in maintaining the inmate movement policy which does not permit Plaintiff or any other inmate to freely move about the correctional facility, but instead restricts movement to call-outs for specific programs. *See* Movement Policy, *passim*. Defendant Greis states that as Collins Deputy of Security, he is responsible for "oversight of security matters and personnel, investigations, and generating as well as enforcing department policies." Greis Declaration ¶ 1. Greis explains that religious celebrations at the correctional facility "like all programs, involve the coordination of programming and security." *Id.* ¶ 3. Significantly, "movement throughout the [correctional] facility is important to the safety and security of both the security personnel, civil personnel and inmates." *Id.* ¶ 16. The Movement Policy is maintained to direct the movement of inmates throughout the correctional facility, *id.*, and all inmates, including Plaintiff are required to adhere to the Movement Policy, *id.* ¶ 17, which does not change during the year. *Id.* ¶ 16. Because DOCCS security personnel are required to enforce the Movement Policy, where two call-outs would

occur simultaneously or overlap, an inmate, including Plaintiff, is required to decide which of the programs he wishes to attend.  *Id*. ¶¶ 17-19.  Greis further maintains that there are two library call-outs each day, with only the evening law library call-out coinciding with Ramadan, such that Plaintiff could have attended the afternoon law library call-out which would not have interfered with also attending the Ramadan services call-out.  *Id*.  Plaintiff, who has not responded in opposition to summary judgment, does not argue otherwise.

Greis's assertions, unchallenged by Plaintiff, establish that Collins's Movement Policy has a "valid, rational connection to a legitimate governmental objective," for which the corrections officers have no alternative means of ensuring.  *Holland*, 758 F.3d at 222-23.  Moreover, although the Movement Policy does prevent Plaintiff from attending on the same day during Ramadan both the evening law library call-out as well as the Ramadan call-out, Plaintiff can attend both the afternoon law library call-out and the Ramadan call-out on the same day.  *Id*.  As discussed, Discussion, *supra*, at 14, Plaintiff does not claim that his inability to attend the evening law library call-out resulting in missing any deadlines in any of his then pending litigation, or resulted in the dismissal of any such action.

On this record, Defendants' enforcement of the Movement Policy, despite rendering it impossible for Plaintiff to attend both the evening law library call-out and Ramadan services call-out, is related to a valid penological interest and poses little hardship on Plaintiff's free exercise of his religion or to Plaintiff's access to the courts. As such, summary judgment should be GRANTED insofar as Plaintiff challenges the Movement Policy.

3.      **Missed Meals**

On August 23, 2009, after reporting to the madjid for Ramadan services at 5:30

P.M., Plaintiff then returned to his housing unit to sign-up for the evening law library call-

out, subsequent to which Plaintiff's request to return to the masjid to attend further

Ramadan services that evening was denied, and Plaintiff was required to return to his

housing unit.  Complaint ¶¶ 21-22.  As such, although Plaintiff fasted from sunrise to

sunset, the denial of permission to return for the remaining Ramadan services resulted

in Plaintiff's not eating the evening Ramadan meal or receiving the sahor bag for the

next morning's breakfast.  *Id.* ¶ 23.  Plaintiff thus missed two consecutive meals and did

not again eat until the evening of August 24, 2009.  *Id.*  Plaintiff asserts the denial of the

two meals constituted cruel and unusual punishment in violation of the Eighth

Amendment.  Complaint ¶¶ 31-33.  Defendants argue in support of summary judgment

that missing two meals is *de minimus* and does not arise to a constitutional violation.

Defendants' Memorandum at 14.

The Eighth Amendment "require[s] that prisoners be served nutritionally

adequate food that is prepared and served under conditions which do not present an

immediate danger to the health and wellbeing of the inmates who consume it."  *Robles*

*v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).  "While no court has held that denial of food

is a *per se* violation of a prisoner's Eighth Amendment rights, under certain

circumstances a substantial deprivation . . . may well be recognized as being of

constitutional dimension."  *Id.* (citations omitted).  A substantial deprivation of food is

one that is sufficient to create a serious danger to the inmate's health.  *See*, *e.g.*,

*Beckford v. Portuondo*, 151 F.Supp.2d 204, 213 (N.D.N.Y. 2001) (denying summary

judgment of Eighth Amendment claim alleging deprivation of two of three meals per day

for eight days); and *Moss v. Ward*, 450 F.Supp. 591, 596-97 (W.D.N.Y. 1978) (holding

denial of all food for four days as punishment for breaking a prison disciplinary rule

violated Eighth Amendment).   Significantly, courts within the Second Circuit have

consistently held the deprivation of two meals is *de minimus* and, thus, insufficient to

establish a substantial deprivation creating a serious danger to an inmate's health so as

to support an Eighth Amendment claim. *See*, *e.g.*, *Benjamin v. Kooi*, 2010 WL 985844,

at * 11 (N.D.N.Y. Feb. 25, 2010) (missing two or three meals did not "deprive [plaintiff]

of the minimal measures of necessities required for civilized living"), *report and

recommendation adopted*, 2010 WL 985823 (N.D.N.Y. Mar. 17, 2010); *Waring v.

Meachum*, 175 F.Supp.2d 230, 240-41 (D.Conn. 2001) (holding no Eighth Amendment

violation where inmates missed one or two meals in absence of any indication that

future meals were also missed).   Moreover, the undisputed facts establish that Plaintiff's

missed meals, including the evening meal on August 23, 2009, and breakfast on August

24, 2009, can only be attributed to Plaintiff's attempt to attend two call-outs that were

scheduled for the same time, in violation of the correctional facility's Movement Policy.

*See Wray*, 490 F.3d at 193-94 (no § 1983 claim lies absent causal connection between

defendant's action and plaintiff's injury).

Accordingly, summary judgment on Plaintiff's Eighth Amendment claim that he

missed two consecutive meals should be GRANTED.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion (Doc. No. 41), should be

GRANTED; the Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 2, 2014
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      December 2, 2014
            Buffalo, New York